## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| MICROBILT CORPORATION, | : | Case No.: 11-18143 |
| | : | |
| Debtor. | : | Honorable Michael B. Kaplan |
| | : | |
| MICROBILT CORPORATION, | : | Adv. Pro. No.: 11-02488 |
| | : | |
| Plaintiff, | : | Honorable Michael B. Kaplan |
| | : | |
| v. | : | |
| | : | Civil Action No.: 12-03861 |
| FIDELITY NATIONAL | : | |
| INFORMATION SERVICES, INC. and | : | Honorable Joel A. Pisano |
| CHEX SYSTEMS, INC., | : | |
| | : | |
| Defendants. | : | |
| | : | |

## REPLY IN FURTHER SUPPORT OF MOTION OF DEFENDANTS FIDELITY NATIONAL INFORMATION SERVICES, INC. AND CHEX SYSTEMS, INC. TO WITHDRAW THE REFERENCE

Derek J. Baker, Esquire
Gary J. Ruckelshaus, Esquire
Brian M. Schenker, Esquire
REED SMITH LLP
Princeton Forrestal Village
136 Main Street, Suite 250
Princeton, New Jersey 08540
Telephone:  609-987-0050
Fax:  609-951-0824

*Counsel for Fidelity National Information Systems, Inc. and Chex Systems, Inc.*

## <u>TABLE OF CONTENTS</u>

<u>PAGE</u>

TABLE OF AUTHORITIES .................................................................................... ii

PRELIMINARY STATEMENT .............................................................................1

LEGAL ARGUMENT.............................................................................................4

      A.      Under Stern v. Marshall, the Bankruptcy Court Lacks Constitutional Authority to Enter a Final Judgment on the Debtor's Alleged Claims in Its Amended Complaint...........................4

      B.      The Bankruptcy Court's Experience with the Parties and Its Decision on the Assumption Motion Does Not Favor a Denial of the Motion. ..............................................................................9

      C.      The Defendants Have Not Filed the Motion to Engage in Forum Shopping............................................................................11

      D.      The Debtor's Impending Proceedings on Confirmation of Its Reorganization Plan Weighs in Favor of Withdrawing the Reference...........................................................................13

CONCLUSION .....................................................................................................15

# TABLE OF AUTHORITIES

## CASES          PAGE

*Calascibetta v. Penson Fin. Servs., Inc. (In re U.S. Mortgage Corp.)*,
   2012 WL 1372284 (D.N.J. April 19, 2012) ..........................................................7

*Dev. Specialists, Inc. v. Akin Gump Strauss Hauer & Feld, LLP*
   *(In re Coudert Bros. LLP)*,
   462 B.R. 457 (S.D.N.Y. 2011) .................................................. 6, 7, 9

*Doctors Associates, Inc., v. Desai*,
   2010 WL 3326726 (D.N.J. Aug. 23, 2010).................................... 8, 11

*Field v. Lindell* (*In re Mortgage Store, Inc.*),
   464 B.R. 421 (D. Haw. 2011)..............................................................10

*In re BearingPoint, Inc.*,
   453 B.R. 486 (Bankr. S.D.N.Y. 2011) ....................................................8

*In re Dwek*,
   2010 WL 2545174 (D.N.J. June 18, 2010) .................................... 8, 11

*In re Pruitt*,
   910 F.2d 1160 (3rd Cir. 1990)..................................................................4, 9

*Kohn v. Haymount Ltd. P'ship, LP* (*In re Int'l Benefits Group*),
   2006 WL 2417297 (D.N.J. Aug. 21, 2006).............................................7

*Michaelson v. Golden Gate Private Equity*
   *(In re Appleseed's Intermediate Holdings, LLC)*,
   2011 WL 6293251 (Bankr. D. Del. Dec. 15, 2011) ..............................8

*Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*,
   458 U.S. 50 (1982) .................................................................................6

*Shalom Torah Ctrs. v. Philadelphia Indem. Ins. Cos.*,
   2011 WL 1322295 (D.N.J. Mar. 31, 2011) .........................................14

*Stern v. Marshall*,
   131 S.Ct. 2594 (2011) ...........................................................................6

*Wakefern Food Corp. v. C&S Wholesale Grocers, Inc.*,
   No. 00-04372, Civ. A. 01-233, 2002 WL 1482392 (D. Del. 2002).....................11

US_ACTIVE-110154703.5

## STATUTES

28 U.S.C. § 157(b)(2)(c) ................................................................................................5

28 U.S.C. § 157(b)(3) ....................................................................................................5

28 U.S.C. § 157(c)(1) .....................................................................................................6

US_ACTIVE-110154703.5

## <u>PRELIMINARY STATEMENT</u>

This Court should grant the motion of Defendants Fidelity National Information Services, Inc. ("<u>FNIS</u>") and Chex Systems, Inc. ("<u>Chex</u>" and, together with FNIS, the "<u>Defendants</u>") to withdraw the reference of the United States District Court for the District of New Jersey to the United States Bankruptcy Court for the District of New Jersey pursuant to 28 U.S.C. § 157(d), Fed. R. Bankr. P. 5011, and D.N.J. LBR 5011-1 [Civ. Docket No. 1] (the "<u>Motion</u>")[1] of the above-captioned adversary proceeding, referenced as Adv. Pro. No. 11-02488-MBK (the "<u>Adversary Proceeding</u>") for four main reasons.[2]

First, in its opposition, the Debtor effectively concedes that – in the wake of the *Stern v. Marshall* decision – the Bankruptcy Court lacks constitutional authority to enter final judgments on the alleged claims asserted in the Amended Complaint, which Judge Kaplan has now even acknowledged in the recent Determination Order (as defined hereinafter).  In a desperate attempt to persuade

---

[1]     Capitalized terms used but not defined herein have the meaning given to them in the Motion.

[2]     In an apparent attempt to conflate the distinct issues raised by the Motion filed in this Adversary Proceeding and civil action, the Debtor's opposition confusingly includes discussion of a motion similar to the Motion filed by the Defendants in another adversary proceeding and civil action involving the Debtor, among others, which motion is not presently before this Court.  In this Reply, Chex will only be addressing the matter actually before this Court, *i.e.*, the Motion, and will attempt to undo any confusion caused by the Debtor.

this Court otherwise, the Debtor has relied on a number of cases in its opposition – including *Doctors Associates* and *In re Dwek* – that pre-date the *Stern v. Marshall* decision. As a result, the Debtor simply cannot refute that a denial of the Motion would require this Court to review and retry all issues decided by the Bankruptcy Court with respect to these claims under a *de novo* standard of review. As a result, it is indisputable that a denial of this Motion will result in multiple and unnecessary litigation and not promote an economical use of judicial, or the parties', resources.

Second, the Debtor claims that Judge Kaplan's "familiarity" with the Trial in connection with the Assumption Motion somehow places the Bankruptcy Court in a better position to consider and resolve the claims in the Amended Complaint than this Court. This argument is utter nonsense. The truth is that the alleged claims have absolutely nothing to do with the Assumption Motion, and there is very little overlap between the two disputes. In fact, none of the alleged claims asserted in the Amended Complaint relate – even tangentially – to the assumption of the Resale Agreement. As a result, Judge Kaplan has no more expertise or experience in dealing with these alleged claims than does this Court, and any suggestion to the contrary by the Debtor is wholly disingenuous.

Third, the Debtor next asserts that the Defendants have filed the Motion to engage in "forum shopping" because the Defendants are "plainly dissatisfied" with

US_ACTIVE-110154703.5

Judge Kaplan because the Bankruptcy Court has been "unfriendly" to the Defendants.  Nothing could be further from the truth.  In support of its position, the Debtor blatantly misrepresents Judge Kaplan's decision on the Motion to Dismiss the Amended Complaint (which was granted in part) and misstates Judge Kaplan's decision on the Assumption Motion by conveniently ignoring the fact that Judge Kaplan ruled in Chex's favor in finding that the Debtor had breached the Resale Agreement.[3]  Thus, the suggestion that Judge Kaplan has been an "unfriendly" forum to the Defendants is simply absurd.

Finally, the Debtor tries to claim that its procedurally mature Bankruptcy Case should have no bearing on the Motion.  The Debtor ignores the fact that its Plan is on the "fast-track" for confirmation and the Adversary Proceeding will both burden the Bankruptcy Court during the confirmation proceedings on the Debtor's Plan and continue long after the Debtor has exited from chapter 11 bankruptcy.

---

[3]      While Chex has appealed Judge Kaplan's ruling on the Assumption Motion, Chex has done so primarily because it disagrees with the Bankruptcy Court's determination of the scope and breadth of the cure required to be provided by the Debtor to assume the Resale Agreement.  The fact remains that, contrary to the Debtor's position at the Trial that it was not in default of the Resale Agreement for any reason, Judge Kaplan found the Debtor to be in default of the Resale Agreement for three distinct reasons, including failure to pay Chex amounts owed thereunder.

US_ACTIVE-110154703.5

Accordingly, for each of these reasons, this Court should grant the Defendants' Motion and withdraw the reference in connection with the Adversary Proceeding.

## LEGAL ARGUMENT

In its opposition, the Debtor has failed to rebut the Defendants' showing that the principles articulated in the *Stern v. Marshall* decision, along with the factors originally articulated by the Third Circuit in *In re Pruitt*, 910 F.2d 1160 (3rd Cir. 1990), all weigh in favor of withdrawing the reference of the Adversary Proceeding.  Each of the Debtor's arguments will be addressed below.

**A.      Under *Stern v. Marshall,* the Bankruptcy Court Lacks Constitutional Authority to Enter a Final Judgment on the Debtor's Alleged Claims in Its Amended Complaint.**

Withdrawal of the automatic reference of the Adversary Proceeding to the Bankruptcy Court is warranted because the Bankruptcy Court does not have constitutional authority to enter final judgments on the alleged claims asserted by the Debtor in its Amended Complaint.  The Debtor's alleged claims against the Defendants (i) are state law claims arising in tort, *i.e.*, tortious interference with existing and prospective contractual relations, trade libel, commercial disparagement, slander, and libel, (ii) seek affirmative recoveries which merely augment the Debtor's bankruptcy estate and do not otherwise affect creditors' rights generally, and (iii) assert private rights that only an Article III court can

- 4 -

constitutionally adjudicate (collectively, the "<u>Alleged State Law Claims</u>").[4]  These three facts are not challenged by the Debtor in the Debtor's opposition.

In their Answer, the Defendants expressly withheld their consent to the Bankruptcy Court entering final judgments on the Alleged State Law Claims.  (*See* Answer ¶¶ 7-8.)  Furthermore, concurrently with this Motion, the Defendants filed a Motion for a Determination of Core and Non-Core Proceedings Pursuant to 28 U.S.C. § 157(b)(3) with the Bankruptcy Court [Adv. Pro. Docket No. 20].  In ruling on that motion, the Bankruptcy Court held that (i) all of the Alleged State Law Claims against FIS were non-core; and (ii) all of the Alleged State Law Claims against Chex were core under 28 U.S.C. § 157(b)(2)(c) by reason of being state law counterclaims against Chex, who had filed a Proof of Claim (the "<u>Determination Order</u>").  The Bankruptcy Court went on to hold in its Determination Order that it lacked constitutional authority to enter final judgment on any Alleged State Law Claims against Chex that would not be resolved in ruling on Chex's Proof of Claim.  *See id.*

Chex's Proof of Claim reflects only amounts owed by the Debtor to Chex under the Resale Agreement.  Chex's Proof of Claim arises under and relates solely

---

[4]    The Debtor's claims with respect to the automatic stay of the Bankruptcy Code are being asserted in the other adversary proceeding and civil action involving the parties, among others, and **not** in this Adversary Proceeding and civil action.

US_ACTIVE-110154703.5

to the obligations of the Debtor and Chex under the Resale Agreement.  None of the Alleged State Law Claims against Chex will be resolved in any ruling upon Chex's Proof of Claim.  Thus, adjudication of Chex's Proof of Claim will in no way affect, and is completely independent from an adjudication of, the Alleged State Law Claims against Chex – as such claims do not arise under or even relate to the obligations of the Debtor and Chex under the Resale Agreement.  These facts are also not challenged in the Debtor's opposition.

Therefore, under its own holding, the Bankruptcy Court: (i) does not have constitutional or statutory authority to enter final judgments on the Alleged State Law Claims against FIS; and (ii) does not have constitutional authority to enter final judgments on the Alleged State Law Claims against Chex.  *See* 28 U.S.C. § 157(c)(1); *Stern v. Marshall*, 131 S.Ct. 2594, 2608, 2611, 2614-18, 2620 (2011); *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 70-71, 84 (1982); *Dev. Specialists, Inc. v. Akin Gump Strauss Hauer & Feld, LLP* (*In re Coudert Bros. LLP*), 462 B.R. 457, 464 (S.D.N.Y. 2011) ("the Bankruptcy Court's power to enter final judgments on matters is not co-extensive with that the statute considers core") (internal quotations omitted).  For that reason, absent a withdrawal of the reference of the Adversary Proceeding, this Court will be required to review and retry all issues decided by the Bankruptcy Court with respect to the Alleged State Law Claims under a *de novo* standard of review.  *See id.*

US_ACTIVE-110154703.5

Withdrawal of the automatic reference would, therefore, promote an economical use of the resources of this Court, Bankruptcy Court, and parties by avoiding unnecessary duplicative litigation. *See Calascibetta v. Penson Fin. Servs., Inc.* (*In re U.S. Mortgage Corp.*), Nos. 11-07222-DMC/JAD, 11-07223-DMC/JAD, 2012 WL 1372284, at *4 (D.N.J. April 19, 2012) ("There is ... no reason to maintain the reference to the bankruptcy court, only to bring the matter back to this Court for later reconsideration and a final decision."); *Kohn v. Haymount Ltd. P'ship, LP* (*In re Int'l Benefits Group*), No. 06-2363, 2006 WL 2417297, at *3 (D.N.J. Aug. 21, 2006) ("It would be a more efficient use of resources for this Court to consider the matter and make a final decision rather than to maintain the reference to the bankruptcy court, only to bring the matter back to this Court for later reconsideration and a final decision.  In addition, withdrawal of the reference to the Bankruptcy Court would prevent the inevitable delay and cost to the parties of such duplication."); *In re Coudert Bros. LLP*, 462 B.R. at 473 ("there is no reason [for the District Court] not to do now what must be done eventually.").  Withdrawal of the automatic reference will also avoid potential asserted collateral attacks based on *Stern v. Marshall* on any order or judgment that would have otherwise been issued by the Bankruptcy Court with respect to the Alleged State Law Claims.  *See In re U.S. Mortgage Corp.*, 2012 WL 1372284, at *2 ("the confusion generated by [*Stern v. Marshall's*] holding **weighs in favor of**

- 7 -

**withdrawal** ... avoid[ing] any potential future collateral attacks on a judgment issued by the Bankruptcy Court.") (emphasis added); *Michaelson v. Golden Gate Private Equity* (*In re Appleseed's Intermediate Holdings, LLC*), No. 11-807, 2011 WL 6293251, at *3 (Bankr. D. Del. Dec. 15, 2011) ("To avoid confusion and future collateral acts on a judgment issued by the Bankruptcy Court, the prudent action is to withdraw the reference at this juncture."); *In re BearingPoint, Inc.*, 453 B.R. 486, 488 (Bankr. S.D.N.Y. 2011) (same).[5]

Furthermore, because this Court will be required to review and retry all issues decided by the Bankruptcy Court with respect to the Alleged State Law Claims under a *de novo* standard of review, for the reasons set forth in the Motion, withdrawal of the automatic reference of Adversary Proceeding will (i) promote uniformity in the administration of the litigation, (ii) foster an economical use of the resources of this Court, Bankruptcy Court, and parties, (iii) expedite the

---

[5]     We note that the Debtor cites, and principally relies on, cases from this Court that were decided **prior to** the *Stern v. Marshall* decision – including *Doctors Associates, Inc. v. Desai*, No. 10-575, 2010 WL 3326726 (D.N.J. Aug. 23, 2010) and *In re Dwek*, No. 07-11757, 2010 WL 2545174 (D.N.J. June 18, 2010) and are factually distinct.  Therefore, these cases do not incorporate, or take into account, the Supreme Court's thought process, reasoning, or ruling in *Stern v. Marshall* and are distinguishable.  *See Doctors Associates, Inc.*, 2010 WL 3326726, at *6 ("The fact that the [proof of] claims are nearly identical to the underlying adversary proceeding supports leaving the case in bankruptcy court."); *In re Dwek*, 2010 WL 2545174, at *4 ("The claims at the center of Defendants' Motion are the ownership and priority of security interests of the Securities.").

US_ACTIVE-110154703.5

Debtor's Bankruptcy Case, and (iv) reduce forum shopping.  *See In re Pruitt*, 910 F.2d 1160, 1168 (3rd Cir. 1990); *In re Coudert Bros. LLP*, 462 B.R. at 467, at 473 ("where the Bankruptcy Court lacks final adjudicative authority, the remaining ... considerations will often tend to point toward withdrawal ... [because] in a given case unnecessary costs could be avoided by a single proceeding in the district court.").  Accordingly, the Motion should be granted, and the reference withdrawn.

**B.      The Bankruptcy Court's Experience with the Parties and Its Decision on the Assumption Motion Does Not Favor a Denial of the Motion.**

The Debtor argues that Judge Kaplan's "familiarity" with the hearing on the Defendants' Motion to Dismiss the Amended Complaint and Trial in connection with the Assumption Motion will place the Bankruptcy Court in a unique (and better) position to consider and resolve the claims in the Amended Complaint than this Court.  In the Debtor's opposition, the Debtor repeatedly overstates and misrepresents the importance of the prior proceedings in the Bankruptcy Court with respect to the Motion to Dismiss, the Assumption Motion, and the main Bankruptcy Case to support its argument.  However, as this Court is undoubtedly aware, in connection with the Defendants' Motion to Dismiss, the Bankruptcy Court was required to assume that the facts alleged in the Complaint were true and was prohibited from considering any other facts beyond the four corners of the Complaint.  Thus, this Court can obtain the same "familiarity" the Bankruptcy

- 9 -

US_ACTIVE-110154703.5

Court has with the facts of this Adversary Proceeding by simply reading the Amended Complaint.

Additionally, a review of the docket for the Debtor's main Bankruptcy Case confirms that the only meaningful proceedings therein have been the proceedings on the Assumption Motion.  However, the proceedings on the Assumption Motion relate solely to the obligations of the Debtor and Chex under the Resale Agreement.  As noted before, the Alleged State Law Claims do not arise under or even relate to the obligations of the Debtor and Chex under the Resale Agreement. Contrary to the Debtor's arguments in its opposition, the Alleged State Law Claims have absolutely nothing to do with the Assumption Motion, and there is very little overlap between the two disputes.  In fact, none of the Alleged State Law Claims asserted in the Amended Complaint relate – even tangentially – to the assumption of the Resale Agreement.  Thus, it is simply not the case, as the Debtor attempts to suggest, that the Bankruptcy Court has learned **material facts related to this Adversary Proceeding** in the prior proceedings in the Bankruptcy Case.[6]  **At best**,

---

[6]     Significantly, in support of its argument that the Bankruptcy Court's "familiarity" with prior proceedings weighs in favor of denying the Motion, the Debtor cites cases that only support the proposition that a bankruptcy court's "familiarity" with material facts related to the adversary proceeding weighs in favor of denying a motion to withdraw the reference. *See Field v. Lindell* (*In re Mortgage Store, Inc.*), 464 B.R. 421, 428 (D. Haw. 2011) ("Specifically, the bankruptcy court ... has a high level of familiarity **with this action** given the multiple motions it has already presided over.") (emphasis added); *Doctors*

Continued on following page

- 10 -

US_ACTIVE-110154703.5

the Bankruptcy Court has learned general background information about the parties and the industry in which they operate that might prove useful in the Adversary Proceeding.  The parties, however, can easily make this Court aware of such information, if it is not already by virtue of considering the Motion and Amended Complaint.

As a result, Judge Kaplan has no more expertise or experience in dealing with these Alleged State Law Claims than does this Court and the Bankruptcy Court's experience with the parties and its decision on the Assumption Motion does not favor a denial of this Motion.

## C. The Defendants Have Not Filed the Motion to Engage in Forum Shopping.

In a clear attempt to distract from its own conduct, the Debtor asserts in its opposition that the Defendants have filed the Motion to engage in "forum

---

Continued from previous page

*Associates, Inc.*, 2010 WL 3326726, at 7 ("Judge Winfield is familiar with **the matter**, having already decided prior motions.") (emphasis added); *In re Dwek*, 2010 WL 2545174, at *4 (noting that the instant action related to ninety-eight pending adversary proceedings related to the recovery of property and assets of the debtor's bankruptcy estate, and the fact that the bankruptcy court docket already spanned over 400 printed pages); *Wakefern Food Corp. v. C&S Wholesale Grocers, Inc.*, No. 00-04372, Civ. A. 01-233, 2002 WL 1482392, at *4 (D. Del. 2002) ("Thus, it is apparent that the Bankruptcy Court is very familiar **with the facts and issues which are crucial to the determination of the C&S Action**.") (emphasis added).  Moreover, the Bankruptcy Court's expertise in the Bankruptcy Code is not implicated here, where the Alleged State Law Claims do not arise under or otherwise relate to the Bankruptcy Code.

US_ACTIVE-110154703.5

shopping" because the Defendants are "plainly dissatisfied" with Judge Kaplan's rulings and the Bankruptcy Court has been "unfriendly" to the Defendants.  Here, the Debtor blatantly misrepresents in its opposition that Judge Kaplan "denied" the Motion to Dismiss filed by the Defendants in the Adversary Proceeding,[7] when in fact, the Defendants' motion was *granted in part* and one of the Debtor's three claims was dismissed without prejudice, which resulted in Debtor's filing of the Amended Complaint [Adv. Pro. Docket No. 10].  In addition, the Debtor clearly misstates Judge Kaplan's decision on the Assumption Motion by conveniently ignoring the fact that Judge Kaplan *ruled in Chex's favor* by finding that the Debtor breached its obligations to Chex under the Resale Agreement [Bankr. Docket No. 431].  Contrary to the Debtor's position at the Trial that it was not in default of the Resale Agreement for any reason, Judge Kaplan found the Debtor to be in default of the Resale Agreement for three distinct reasons, including failure to pay Chex amounts owed thereunder.[8]

---

[7]     Moreover, although the Debtor attempts to attribute significance to the fact that the Defendants filed the Motion after the Bankruptcy Court ruled on their Motion to Dismiss, it is simple common sense that the Defendants would first seek dismissal of the Alleged State Law Claims (and the original Complaint in its entirety) before incurring the defense costs associated with seeking withdrawal of the reference – and not *vice versa*.

[8]     Chex has appealed Judge Kaplan's ruling on the Assumption Motion primarily because it disagrees with the Bankruptcy Court's determination of the

Continued on following page

- 12 -

Needless to say, the Bankruptcy Court is neither as "friendly" a forum to the Debtor – nor as "unfriendly" to the Defendants – as the Debtor suggests in its Opposition.

**D.    The Debtor's Impending Proceedings on Confirmation of Its Reorganization Plan Weighs in Favor of Withdrawing the Reference.**

Finally, the Debtor disingenuously attempts to claim that the advanced stage of its procedurally mature Bankruptcy Case should have no bearing on a decision on the Motion. As made clear in the Debtor's recently filed Memorandum of Law Regarding Impairment of Claims in Support of Confirmation of the Debtors' Third Amended Chapter 11 Plan of Reorganization [Bankr. Docket No. 538], the Debtor is aggressively pursuing a fast-track exit from chapter 11 bankruptcy.[9] In fact, the Debtor is taking the extraordinary step of pursuing confirmation of its Plan without the Bankruptcy Court's prior approval of a disclosure statement describing the Plan and without soliciting votes from creditors. By contrast, the Adversary Proceeding is still very much in its preliminary stages and, as of the date of this filing, no written discovery has commenced. For that reason, the Adversary Proceeding is

---

Continued from previous page

scope and breadth of the cure required to be provided by the Debtor to assume the Resale Agreement.

[9]    Despite the Debtor's vague and unsubstantiated claims of postponement, a hearing related to confirmation of the Debtor's Plan is still scheduled for August 7, 2012.

- 13 -

US_ACTIVE-110154703.5

anticipated to both burden the Bankruptcy Court during the confirmation proceedings on the Debtor's Plan and continue well after the Debtor has exited from chapter 11 bankruptcy.   Thus, "[t]he withdrawal of the reference of the Adversary Proceeding will speed the bankruptcy to resolution and conserve the resources of the parties and of both courts.   Because this proceeding entails exclusively state law claims, it is in the Court's best interest to withdraw the non-bankruptcy Coverage Action, while the Bankruptcy Court continues to administer the Chapter 11 case and conduct other bankruptcy proceedings."  *Shalom Torah Ctrs. v. Philadelphia Indem. Ins. Cos.*, No. 10-6766, 2011 WL 1322295, at *3 (D.N.J. Mar. 31, 2011).

Furthermore, absent a withdrawal of the reference of the Adversary Proceeding, the Defendants will be forced to litigate state law claims in a forum where there is no connection to an ongoing bankruptcy case and where the trier of fact will lack sufficient constitutional authority to issue a final judgment or grant the parties complete relief.   Therefore, because the parties will effectively be forced to litigate the Alleged State Law Claims twice – once before the Bankruptcy Court and once again before this Court – the Debtor's impending exit from chapter 11 bankruptcy weighs strongly in favor of withdrawing the reference of the Adversary Proceeding.

US_ACTIVE-110154703.5

## <u>CONCLUSION</u>

For the foregoing reasons, the Defendants respectfully request that this Court grant their motion to withdraw the reference of the Adversary Proceeding from this Court to the Bankruptcy Court.

Respectfully submitted,

Dated: July 30, 2012                    By:   */s/ Gary J. Ruckelshaus*
                                                 Derek J. Baker, Esquire
                                                 Gary J. Ruckelshaus, Esquire
                                                 Brian M. Schenker, Esquire
                                                 REED SMITH LLP
                                                   Princeton Forrestal Village
                                                 136 Main Street, Suite 250
                                                 Princeton, New Jersey 08540

                                                 *Counsel for Fidelity National*
                                                 *Information Systems, Inc. and Chex*
                                                 *Systems, Inc.*

US_ACTIVE-110154703.5