# *EXHIBIT A*

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

**Caption in Compliance with D.N.J. LBR 9004-2(c)**

Derek J. Baker, Esquire (DB8783)
Gary J. Ruckelshaus, Esquire
Brian M. Schenker, Esquire (BS7487)
REED SMITH LLP
Princeton Forrestal Village
136 Main Street, Suite 250
Princeton, New Jersey 08540
Telephone:  609-987-0050
Fax:  609-951-0824
dbaker@reedsmith.com
gruckelshaus@reedsmith.com
bschenker@reedsmith.com

*Counsel for Fidelity National Information Systems,*
*Inc. and Chex Systems, Inc.*

| | |
|---|---|
| In Re: | Case No.: 11-18143-MBK |
| MICROBILT CORPORATION, | Judge: Honorable Michael B. Kaplan |
| Debtor. | Chapter 11 |
| MICROBILT CORPORATION, | Adv. Pro. No.: 11-02488-MBK |
| Plaintiff, | Civil Action No.: 12- |
| v. | |
| FIDELITY NATIONAL INFORMATION SERVICES, INC. and CHEX SYSTEMS, INC., | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION OF DEFENDANTS FIDELITY NATIONAL INFORMATION SERVICES, INC. AND CHEX SYSTEMS, INC. TO WITHDRAW THE REFERENCE OF THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY TO THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF NEW JERSEY PURSUANT TO 28 U.S.C. § 157(D), FED. R. BANKR. P. 5011, AND D.N.J. LBR 5011-1**

US_ACTIVE-109794778.1

**(B)    Withdrawal of the Automatic Reference of the Adversary Proceeding Would Foster an Economical Use of the Resources of the District Court, Bankruptcy Court, and Parties**

Allowing final orders and judgments on all Alleged State Law Claims to originate from the District Court and be subject to the same standard of review also fosters the economical use of the resources of the District Court, Bankruptcy Court, and parties and promotes judicial economy by eliminating duplicative litigation. Here, where the District Court will be required to review and retry all issues decided by the Bankruptcy Court with respect to the Alleged State Law Claims under a *de novo* standard of review, there is simply "no reason to maintain the reference to the bankruptcy court, only to bring the matter back to this Court for later reconsideration and a final decision." *See In re U.S. Mortgage Corp.*, 2012 WL 1372284, at *4 (internal quotations omitted). Doing so only duplicates litigation at the expense of the parties' and Bankruptcy Court's time and resources. From the District Court's perspective, "there is no reason not to do now what must be done eventually." *See In re Coudert Bros. LLP*, 462 B.R. at 473.

**(C)    Withdrawal of the Automatic Reference of the Adversary Proceeding Would Expedite the Debtor's Bankruptcy Case**

As noted before, the Adversary Proceeding is very much in its preliminary stages. Under the Scheduling Order, completion of discovery is not even anticipated until February 15, 2013 (at the earliest). Meanwhile, the confirmation hearing on the Debtor's Plan is currently scheduled for June 26, 2012. Thus, the Adversary Proceeding is anticipated to both burden the Bankruptcy Court during the confirmation proceedings on the Debtor's Plan and continue well after the Debtor has exited from chapter 11 bankruptcy. Therefore, withdrawal of the automatic reference of the Adversary Proceeding will conserve the resources of the Bankruptcy Court and expedite the resolution of the Bankruptcy Case.

US_ACTIVE-109794778.1

# *EXHIBIT B*

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**
*Caption in Compliance with D.N.J. LBR 9004-2(c)*

Derek J. Baker, Esq.
Gary J. Ruckelshaus, Esq.
Brian M. Schenker, Esq.
REED SMITH LLP
Princeton Forrestal Village
136 Main Street, Suite 250
Princeton, New Jersey 08543
Telephone:  609-987-0050
Telecopy:  609-951-0824

*Counsel for Fidelity National Information*
*Services, Inc. and Chex Systems, Inc.*

|  |  |
|---|---|
| In re:<br><br>MICROBILT CORPORATION, et al.<br><br>Debtor. | Case No. 11-18143<br><br>Honorable Michael B. Kaplan<br><br>Chapter 11 |
| MICROBILT CORPORATION and CL VERIFY, LLC,<br><br>Plaintiffs,<br><br>v.<br><br>FIDELITY NATIONAL INFORMATION SERVICES, INC.; CHEX SYSTEMS, INC.; and CERTEGY LTD.,<br><br>Defendants. | Adversary Proceeding No.: 12-1167 |

**FIDELITY NATIONAL INFORMATION SERVICES, INC. AND CHEX SYSTEMS, INC.'S MOTION TO DISMISS ADVERSARY COMPLAINT**

**I.      PRELIMINARY STATEMENT**

Fidelity National Information Services, Inc. ("FIS")[1] and Chex Systems, Inc. ("Chex") (collectively, "Defendants") move to dismiss the Adversary Complaint filed against them by MicroBilt Corporation ("MicroBilt") and CL Verify, LLC ("CLV") (collectively, "Plaintiffs").[2] Defendants move under Rule 12(b)(6) because the Adversary Complaint fails to state a claim upon which relief could be granted.  Plaintiffs attempt to assert a tortious interference claim against the corporate parent (FIS) and a sister subsidiary (Chex) based on Certegy UK's existing contractual relations with MicroBilt.  However, the law is clear that a party cannot tortiously interfere with its own contracts, and MicroBilt's blatant attempt to overlook and/or sidestep Defendants' corporate relationship with Certegy UK is insufficient to state a cause of action against FIS or Chex for tortious interference under these facts.  In addition, Plaintiffs have the burden to allege facts which, if true, would make plausible their claim for tortious interference with prospective contractual relations.  Plaintiffs have instead presented (a) vague references to certain unnamed third parties, without a single, specifically identified lost customer or end user and (b) vague and unspecified conduct by FIS and/or Chex that allegedly caused harm to Plaintiffs' business.  Many businesses suffer difficulties during economic downturns and many businesses fail.  The connection between FIS and/or Chex's alleged conduct and any alleged harm to Plaintiffs' business cannot simply be assumed in the absence of properly-pleaded facts. Finally, none of the conduct alleged in the Adversary Complaint – collectively or individually – amounts to a violation of the automatic stay.  Even if it did – and it does not – the vague,

---

[1]      Although Defendants disagree with Plaintiffs' continued use of the term "FIS" to describe Fidelity National Information Services, Inc. as a corporate entity, Defendants will use the terms defined by Plaintiff in the Adversary Complaint to avoid any unnecessary confusion.

[2]      In addition, Plaintiffs have also filed this Adversary Complaint suit against Certegy Ltd. ("Certegy UK"). Although Certegy UK will be referenced throughout this Motion, Certegy UK has not yet been served with the Adversary Complaint, and for that reason only, Certegy UK is not a party to this Motion.

possibility of liability, they did not make plaintiffs' right to recovery against defendant "plausible").

As the Court is undoubtedly aware, on November 28, 2011, FIS and Chex filed a motion to dismiss in connection with *virtually identical tortious interference claims* asserted by these Plaintiffs, based on a substantially similar set of operative facts, in a different Adversary Complaint filed in this Bankruptcy Case. *See* Bankr. D.N.J. A-11-2488. On March 1, 2012, this Court granted the motion to dismiss filed by FIS and Chex and granted Plaintiffs leave to amend the deficient tortious interference claims. *See id.* Notwithstanding this Court's decision on the prior motion to dismiss, Plaintiffs have failed to voluntarily amend or replead the claims asserted in this case, and Defendants now file this motion to dismiss.

A.    **Plaintiffs Fail To State A Claim For Tortious Interference with Existing Contractual Relations Under Count I.**

Turning to Count I of the Adversary Complaint, Plaintiffs have failed to assert a valid tortious interference claim under New Jersey law against FIS (as a parent corporation to Certegy UK) or Chex (as a sister subsidiary), which Plaintiffs claim allegedly interfered with Certegy UK's existing contractual relations with MicroBilt.

To support a claim of tortious interference with a contract under New Jersey law, a plaintiff must prove: (1) actual interference with a contract; (2) that the interference was inflicted intentionally by a defendant who is not a party to the contract; (3) that the interference was without justification; and (4) that the interference caused damage. *United Food & Commercial Workers Union v. Fleming Foods East, Inc.*, 105 F. Supp.2d 379, 390 (D.N.J. 2000) (citing *214 Corp. v. Casino Reinvestment Devel. Auth.*, 280 N.J. Super. 624 (Law Div. 1994) (citing *Norwood Easthill Assoc. v. Norwood Easthill Watch*, 222 N.J. Super. 378 (App. Div. 1988)); *Restatement (Second) of Torts* § 766. Thus, it is well established in New Jersey – and

# *EXHIBIT C*

UNITED STATES BANKRUPTCY COURT
<u>FOR THE DISTRICT OF NEW JERSEY</u>
*Caption in Compliance with D.N.J. LBR 9004-2(c)*

**SHERMAN, SILVERSTEIN, KOHL,
ROSE & PODOLSKY, P.A.**
Bruce S. Luckman, Esquire
Michael Dube, Esquire
308 Harper Drive, Suite 200
Moorestown, New Jersey 08057
Telephone: 856-663-1503
Facsimile: 856-488-4744

*Special Litigation Counsel to Debtor*

| | |
|---|---|
| In re:<br><br>MICROBILT CORPORATION, *et al.*,[1]<br><br>    Debtor. | Chapter 11<br><br>Case No.: 11-18143 (MBK)<br><br>Jointly Administered |
| MICROBILT CORPORATION and CL VERIFY, LLC,<br><br>    Plaintiffs,<br><br>    v.<br><br>FIDELITY NATIONAL INFORMATION SERVICES, INC., CHEX SYSTEMS, INC., and CERTEGY LTD.,<br><br>    Defendants. | Adversary Proceeding No.: 12-1167 |

<u>**NOTICE OF PLAINTIFF MICROBILT CORPORATION'S MOTION FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT (ADDING ADDITIONAL VIOLATION-OF-THE-AUTOMATIC-STAY CLAIMS) AGAINT DEFENDANTS FIDELITY NATIONAL INFORMATION SERVICES, INC. AND CHEX SYSTEMS, INC.**</u>

---

[1] The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: MicroBilt Corporation (7436), and CL Verify, LLC (7151).

To:   Defendants Fidelity National Information Services, Inc. and Chex Systems, Inc.
      Care of Derek J. Baker, Esquire and Brian M. Schenker, Esquire
      REED SMITH LLP
      Princeton Forrestal Village
      136 Main Street, Suite 250
      Princeton, New Jersey 08543
      Telephone: 609-987-0050
      Facsimile: 609-951-0824

Debtor MicroBilt Corporation has filed a "Motion for Leave to File a Second Amended

Complaint (Adding Additional Violation-of-the-Automatic-Stay Claims) Against Defendants

Fidelity National Information Services, Inc. and Chex Systems, Inc." ("Motion"), pursuant to

Federal Rule of Civil Procedure 15, as made applicable by Federal Rule of Bankruptcy

Procedure 7015.  In support of its Motion, MicroBilt relies upon the annexed memorandum of

law and exhibit(s) thereto.

**Your rights may be affected. You should read these papers carefully and discuss**

**them with your attorney, if you have one in this bankruptcy case.  (If you do not have an**

**attorney, you may wish to consult an attorney.)**

If you do not want the Court to grant the relief sought in the Motion or if you want the

Court to consider your views on the Motion, then on or before **Monday, August 20, 2012** you or

your attorney must do all of the following:

1.     File an answer explaining your position at:

Office of the Clerk
US Bankruptcy Court
District of New Jersey
Clarkson S. Fisher U.S. Courthouse
402 East State Street
Trenton, New Jersey 08608

and

2.     Mail a copy to the moving party's attorney at:

Bruce S. Luckman, Esquire
Michael Dube, Esquire
SHERMAN, SILVERSTEIN, KOHL,
ROSE & PODOLSKY, P.A.
308 Harper Drive, Suite 200
Moorestown, New Jersey 08057
Telephone: 856-663-1503
Facsimile: 856-488-4744

If you mail your answer to the Bankruptcy Clerk's office for filing, you must mail it early

enough so that it will be received on or before the date stated above; and

If you or your attorney do not take the steps described above, and attend the hearing, the

Court may enter an order granting the relief requested in the Motion.

The Motion is returnable before the Honorable Michael B. Kaplan on **Monday, August**

**27, 2012** at 10:00 A.M. (EDT) in Courtroom #3, United States Bankruptcy Court, Clarkson S.

Fisher U.S. Courthouse, 402 East State Street, Trenton, NJ 08608.

Oral argument is requested if a response is filed.

Dated: <u>Monday, August 6, 2012</u>        Respectfully submitted,

SHERMAN, SILVERSTEIN, KOHL,
ROSE & PODOLSKY, P.A.

By:        /s/ Bruce S. Luckman
        Bruce S. Luckman
        Michael Dube
        308 Harper Drive, Suite 200
        Moorestown, NJ 08057
        Telephone: 856-662-0700
        Facsimile: 856-488-4744

*Attorneys for MicroBilt Corporation*

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW JERSEY
*Caption in Compliance with D.N.J. LBR 9004-2(c)*

**SHERMAN, SILVERSTEIN, KOHL,
ROSE & PODOLSKY, P.A.**
Bruce S. Luckman, Esquire
Michael Dube, Esquire
308 Harper Drive, Suite 200
Moorestown, New Jersey 08057
Telephone: 856-663-1503
Facsimile: 856-488-4744

*Special Litigation Counsel to Debtor*

| | |
|---|---|
| In re:<br><br>MICROBILT CORPORATION, *et al.*,[1]<br><br>    Debtor. | Chapter 11<br><br>Case No.: 11-18143 (MBK)<br><br>Jointly Administered |
| MICROBILT CORPORATION and CL VERIFY, LLC,<br><br>    Plaintiffs,<br><br>    v.<br><br>FIDELITY NATIONAL INFORMATION SERVICES, INC., CHEX SYSTEMS, INC., and CERTEGY LTD.,<br><br>    Defendants. | Adversary Proceeding No.: 12-1167 |

## PLAINTIFF MICROBILT CORPORATION'S MOTION FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT (ADDING ADDITIONAL VIOLATION-OF-THE-AUTOMATIC-STAY CLAIMS) AGAINT DEFENDANTS FIDELITY NATIONAL INFORMATION SERVICES, INC. AND CHEX SYSTEMS, INC.

---

[1] The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: MicroBilt Corporation (7436), and CL Verify, LLC (7151).

Debtor MicroBilt Corporation, by and through its counsel, Bruce S. Luckman and Michael Dube of Sherman, Silverstein, Kohl, Rose & Podolsky, P.A., respectfully moves for leave to File a Second Amended Complaint (adding additional violation-of-the-automatic-stay claims) against Defendants Fidelity National Information Services, Inc. and Chex Systems, Inc., pursuant to Federal Rule of Civil Procedure 15, as made applicable by Federal Rule of Bankruptcy Procedure 7015 ("Motion").   In support of its Motion, MicroBilt relies upon the annexed memorandum of law, and Exhibit "A" thereto.

Dated: <u>Monday, August 6, 2012</u>               Respectfully submitted,

                                        SHERMAN, SILVERSTEIN, KOHL,
                                        ROSE & PODOLSKY, P.A.

                             By:     /s/ Bruce S. Luckman
                                     Bruce S. Luckman
                                     Michael Dube
                                     308 Harper Drive, Suite 200
                                     Moorestown, NJ 08057
                                     Telephone: 856-662-0700
                                     Facsimile: 856-488-4744

                                     *Attorneys for MicroBilt Corporation*

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW JERSEY
*Caption in Compliance with D.N.J. LBR 9004-2(c)*

**SHERMAN, SILVERSTEIN, KOHL,
ROSE & PODOLSKY, P.A.**
Bruce S. Luckman, Esquire
Michael Dube, Esquire
308 Harper Drive, Suite 200
Moorestown, New Jersey 08057
Telephone: 856-663-1503
Facsimile: 856-488-4744

*Special Litigation Counsel to Debtor*

|  |  |
|---|---|
| In re:<br><br>MICROBILT CORPORATION, *et al.*,[1]<br><br>    Debtor. | Chapter 11<br><br>Case No.: 11-18143 (MBK)<br><br>Jointly Administered |
| MICROBILT CORPORATION and CL VERIFY, LLC,<br><br>    Plaintiffs,<br><br>    v.<br><br>FIDELITY NATIONAL INFORMATION SERVICES, INC., CHEX SYSTEMS, INC., and CERTEGY LTD.,<br><br>    Defendants. | Adversary Proceeding No.: 12-1167 |

## PLAINTIFF MICROBILT CORPORATION'S MEMORANDUM OF LAW IN SUPPORT OF ITS "MOTION FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT (ADDING ADDITIONAL VIOLATION-OF-THE-AUTOMATIC-STAY CLAIMS) AGAINT DEFENDANTS FIDELITY NATIONAL INFORMATION SERVICES, INC. AND CHEX SYSTEMS, INC."

---

[1] The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are as follows: MicroBilt Corporation (7436), and CL Verify, LLC (7151).

Plaintiff MicroBilt Corporation ("MicroBilt"), by and through the undersigned counsel, Bruce S. Luckman and Michael Dube of Sherman, Silverstein, Kohl, Rose & Podolsky, P.A., respectfully submits this memorandum of law in support of its "Motion for Leave to File a Second Amended Complaint (Adding Additional Violation-of-the-Automatic-Stay Claims) Against Defendants Fidelity National Information Services, Inc. and Chex Systems, Inc." ("Motion"), pursuant to Federal Rule of Civil Procedure 15, as made applicable by Federal Rule of Bankruptcy Procedure 7015. For the reasons set forth herein, the Motion should be granted.

## STATEMENT OF RELEVANT FACTUAL AND PROCEDURAL HISTORY

MicroBilt and CL Verify commenced this adversary action by filing a Complaint against Defendants Fidelity National Information Services, Inc. ("FIS"), Chex Systems, Inc. ("Chex"), and Certegy, Ltd. ("Certegy") on February 16, 2012. [Docket No. 1.] Therein, MicroBilt and CL Verify advance claims for (1) tortious interference with existing contractual relations; (2) tortious interference with prospective contractual relations; and (3) violations of 11 U.S.C. § 362, the automatic stay provision of the Bankruptcy Code ("Automatic Stay Claim"). [Docket No. 1.] The Automatic Stay Claim seeks to remedy breathtakingly wrongful conduct whereby FIS and Chex directed Certegy UK to cease honoring an executory contract between MicroBilt and Certegy UK *because* MicroBilt had filed a bankruptcy petition in the United States, and Certegy UK honored this directive, all in violation of the automatic stay. [Docket No. 1, ¶¶ 43-54, 71-77.]

In March 2012, FIS and Chex filed a motion to dismiss this entire adversary action. [Docket No. 4].[2] The motion was fully briefed by the parties and, on June 5, 2012, this Honorable Court entered an Order denying the motion in material part. [Docket No. 12.] In

---

[2] Certegy was recently served with process. [Docket No. 25.]

accordance with this Court's ruling, MicroBilt has filed a First Amended Adversary Complaint listing the names of prospective end users that were lost as the result of Chex' conduct. [Docket No. 7.] Thus, in this action, the only amendment to date has been a minor technical amendment.

A copy of the proposed Second Amended Adversary Complaint (with prospective end user names redacted) is attached to this memorandum of law as **Exhibit "A."** As more fully set forth in Count IV therein, in and around June 2012, without seeking relief from the automatic stay provisions of the Bankruptcy Code, Chex (at the direction of FIS) engaged in brazen violations of the automatic stay by, without limitation, doing the following:

- Refusing to sign up new MicroBilt end users unless MicroBilt provided the addresses of those end users.

- Unilaterally shutting down between June 25, 2012 and July 13, 2012 MicroBilt's testing account (used by MicroBilt in the process of setting up new end users and to test and develop products and system changes, including changes such as the new pricing codes Chex has demanded MicroBilt use).

- Representing that they were limiting MicroBilt's access to employees of FIS/Chex to discuss routine business needs arising under the Resale Agreement.

- Most significantly, providing new communications specifications, to take effect in the near future, that would in effect deprive MicroBilt of the ability to purchase Information under the Resale Agreement and terminate MicroBilt's business. Remarkably, Chex has taken the position that, unless MicroBilt acquiesced in these new communications specifications, MicroBilt could not receive the pricing set forth by the Court in its ruling on the Assumption Motions.

## LEGAL ARGUMENT

Under Federal Rule of Civil Procedure 15(a)(2), "leave to shall be freely given [for a party to amend its pleading] when justice so requires."[3] "In the absence of substantial or undue prejudice, denial [of a motion] must be grounded in bad faith or dilatory motives, truly undue or unexplained delay, repeated failure to cure deficiency by amendments previously allowed or futility of amendment."[4] Indeed, under Rule 15, motions to amend pleadings should be liberally granted.[5] The Third Circuit Court of Appeals has affirmatively ruled that "[l]eave to amend must generally be granted unless equitable considerations render it otherwise unjust."[6] Federal Rule of Bankruptcy Procedure 7015 in turn provides that "Rule 15 … applies in adversary proceedings."

The proposed amendments are based upon events which are directly related to the events and transactions set forth in the First Amended Adversary Complaint, but occurred after that pleading was filed and served on FIS and Chex.[7] MicroBilt first understood the material changes which Chex has attempted to impose in early July and, as this Court will recall, the undersigned counsel almost immediately brought the issue to the Court's attention in correspondence. When Chex refused to relent, MicroBilt drafted the attached proposed Second Amended Adversary Complaint and asked defense counsel to consent to the filing. They refused to do so.

---

[3] See Federal Rule of Civil Procedure 15(a)(2).

[4] Heyl & Patterson Int'l, Inc. v. F.D. Rich Housing of V.I., Inc., 663 F.2d 419, 425 (3d Cir. 1981) (citing Foman v. Davis, 371 U.S. 178, 182 (1962)).

[5] See, e.g., Long v. Wilson, 393 F.3d 390, 400 (3d Cir. 2004); see also Arthur v. Maersk, Inc., 434 F.3d 196, 202, 206 (3d Cir. 2006); Bechtel v. Robinson, 886 F.2d 644, 652 (3d Cir. 1989).

[6] See, e.g., Long, 393 F.3d at 400; Arthur, 434 F.3d at 204.

[7] As previously stated, the First Amended Adversary Complaint has now been served upon Certegy, whose attorneys will receive a copy of this memorandum via ECF.

As of today's date, no discovery has been conducted in this case. The final defendant (Certegy), which is also represented by counsel for Chex/FIS, was served with process at the end of July. [Docket No. 25.] The Court has entered a Scheduling Order, but it will likely be extended because of the recently served defendant. Further, FIS/Chex have filed a motion to withdraw the reference (which MicroBilt opposes); if granted, however, that motion will likely result in a new Scheduling Order being entered in the District Court. In the words of FIS and Chex' memorandum of law in support of their motion to withdraw the reference, the instant "Adversary Proceeding is still very much in its preliminary stages."

Under any circumstances or scenario, there will be no delay in the proceedings if the instant Motion is granted, and the additional claims will not cause any delay or any prejudice to the Defendants. In Bechtel, the Third Circuit Court of Appeals held that granting the plaintiff's motion to file a second amended complaint would not prejudice the defendants "since neither [defendant] will be deprived of the chance to present facts or evidence since this case is still in the initial stages of discovery."[8] Because this action is in its initial/preliminary stage, all Defendants will have a full opportunity to obtain discovery and present facts with no prejudice or delay.

## CONCLUSION

For the foregoing reasons, the Motion should be granted.

Dated: <u>Monday, August 6, 2012</u>        Respectfully submitted,

SHERMAN, SILVERSTEIN, KOHL,
ROSE & PODOLSKY, P.A.

By:    <u>/s/ Bruce S. Luckman</u>
       Bruce S. Luckman
       Michael Dube

---

[8] See Bechtel, 886 F.2d at 652.

308 Harper Drive, Suite 200
Moorestown, NJ 08057
Telephone: 856-662-0700
Facsimile: 856-488-4744

*Attorneys for MicroBilt Corporation*

# *EXHIBIT A*

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW JERSEY
*Caption in Compliance with D.N.J. LBR 9004-2(c)*

**SHERMAN, SILVERSTEIN, KOHL,
ROSE & PODOLSKY, P.A.**
Bruce S. Luckman, Esquire
Michael Dube, Esquire
308 Harper Drive, Suite 200
Moorestown, New Jersey 08057
Telephone: 856-663-1503
Facsimile: 856-488-4744

*Special Litigation Counsel to Debtor*

| | |
|---|---|
| In re:<br><br>MICROBILT CORPORATION, *et al.*,[1]<br><br>      Debtor. | Chapter 11<br><br>Case No.: 11-18143 (MBK)<br><br>Jointly Administered |
| MICROBILT CORPORATION and CL VERIFY, LLC,<br><br>      Plaintiffs,<br><br>      v.<br><br>FIDELITY NATIONAL INFORMATION SERVICES, INC., CHEX SYSTEMS, INC., and CERTEGY LTD.,<br><br>      Defendants. | Adversary Proceeding No.: 12-1167 |

## SECOND AMENDED ADVERSARY COMPLAINT

Plaintiffs MicroBilt Corporation ("MicroBilt") and CL Verify, LLC ("CLV")

(collectively, "Plaintiffs"), by and through their attorneys Bruce S. Luckman and Michael Dube

---

[1] The Debtors in these Chapter 11 cases, along with the last four digits of each Debtor's
federal tax identification number, are as follows: MicroBilt Corporation (7436), and CL Verify,
LLC (7151).

of Sherman, Silverstein, Kohl, Rose & Podolsky, P.A., by way of Adversary Complaint against Defendants Fidelity National Information Services, Inc. ("FIS"), Chex Systems, Inc. ("Chex"), and Certegy Ltd. ("Certegy UK") (collectively, "Defendants"), hereby say and state as follows:

## THE PARTIES

1.     Plaintiff MicroBilt Corporation is a Delaware corporation with a principal place of business at 100 Canal Pointe Boulevard, Suite 208, Princeton, New Jersey.  It is a citizen of the State of Delaware and the State of New Jersey.

2.     Plaintiff CL Verify, LLC is a Florida limited liability company with a principal place of business at 100 Canal Pointe Boulevard, Suite 208, Princeton, New Jersey.  It is a citizen of the State of Florida and the State of New Jersey.

3.     Defendant Fidelity National Information Services, Inc. is a Georgia corporation with a principal place of business at 601 Riverside Avenue, Jacksonville, Florida 32204.  It is a citizen of the States of Georgia and Florida.

4.     Defendant Chex Systems, Inc. is a Minnesota corporation with a principal place of business at 7805 Hudson Road, Suite 100, Woodbury, Minnesota 55125.  It is a citizen of the State of Minnesota.

5.     Fidelity National Information Services, Inc. wholly owns and controls Chex Systems, Inc. and does business under name Chex Systems, Inc.

6.     Defendant Certegy Ltd. is a business entity formed pursuant to the laws of the United Kingdom, with a principal place of business and/or registered office at Tricorn House, 51-53 Hagley Road, Birmingham B16 8TU, England.

7.     On information and belief, FIS has an indirect ownership interest in Certegy Ltd.

8.      On information and belief, Chex has no ownership interest, direct or indirect, in Certegy Ltd.

9.      Certegy Ltd. has sufficient contacts with the United States of America and New Jersey, and this Court's exercise of personal jurisdiction over Certegy Ltd. comports with traditional notions of fair play and substantial justice, such that this Court has personal jurisdiction over Certegy Ltd.

## SUBJECT MATTER JURISDICTION AND VENUE

10.     This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334 and Federal Rule of Bankruptcy Procedure 7001.

11.     Venue is proper in this Court pursuant to 28 U.S.C. § 1409.

12.     This adversary proceeding is a "core" proceeding as defined in 28 U.S.C. § 157.

13.     In the event that any part of this adversary proceeding is found to be "non-core," pursuant to Rule 7008 of the Federal Rules of Bankruptcy Procedure, the Plaintiffs consent to the entry of final orders and judgments by this Court.

## STATEMENT OF FACTS COMMON TO ALL COUNTS

### I.

14.     MicroBilt is in the business of providing customer identity data, information, and service offerings to authorized and credentialed end user customers ("end users") that use this information in connection with credit eligibility determinations.

15.     MicroBilt is a "reseller" as defined by the Fair Credit Reporting Act, 15 U.S.C. § 1681, et seq. ("FCRA"), as it assembles from information suppliers and merges consumer credit information that it in turn resells to its end users.

16.     Chex is a "consumer reporting agency" as defined by the FCRA, and a supplier of consumer credit information that is governed by the FCRA.

17.    On or around June 18, 2009, MicroBilt and FIS/Chex reached a settlement of disputes that MicroBilt was then litigating against FIS/Chex and executed a Memorandum of Understanding providing that, among other things, within sixty days the parties would enter into a new contract.

18.    On August 26, 2009, MicroBilt and Chex entered into an Information Resale Agreement, whereby Chex supplies certain consumer credit information to MicroBilt for resale.

19.    The Information Resale Agreement contains a lengthy contractual term and a pricing structure that is favorable to MicroBilt, because MicroBilt in turn released FIS/Chex from substantial damage claims.

## II.

20.    Meanwhile, on or around April 24, 2009, CLV entered into a "Data Reseller Agreement" with Certegy UK, which is in the business of providing United Kingdom public records, historical consumer payment information, and related products and services.

21.    By virtue of the Data Reseller Agreement, Certegy UK agreed, among other things, to exclusively supply to CLV certain consumer credit information that CLV would in turn resell to its end users, and to provide certain "call center services" and "sales support services."

22.    In exchange for exclusivity, CLV in turn agreed to pay Certegy UK certain agreed-upon pricing per transaction, as well as a substantial guaranteed monthly minimum charge (currently £[]redacted per month, which is approximately $[redacted] at current exchange rates), regardless of lower actual data usage.

23.    Subsequently, on or around December 2, 2009, CL Verify UK Ltd., at the time a wholly owned subsidiary of CLV ("CLV UK") and Certegy UK entered into a related "Independent Sales Organization Agreement."

24.     By virtue of the Independent Sales Organization Agreement, Certegy UK agreed to, among other things, do the following:

     a.     Participate in CLV UK-sponsored product and sales training;

     b.     Introduce CLV UK to new customers;

     c.     Actively and consistently market CLV UK's product within the United Kingdom;

     d.     Co-invest enough resources to create awareness in the market of CLV UK's product;

     e.     Fully cooperate with CLV UK in the development and marketing of CLV UK's product; and

     f.     "[P]resent the products of [CLV UK] to qualified prospective users and secure commitments to purchase [those] products as evidenced by signed contracts."

25.     In reliance upon the Data Reseller Agreement and Independent Sales Organization Agreement, CLV (and subsequently and separately MicroBilt) invested substantial money and manpower in connection with analytical testing and marketing efforts in the United Kingdom.

26.     At all relevant times, the Defendants were aware that the Data Reseller Agreement would become worthless to the Plaintiffs in the event that the Defendants did not honor the Independent Sales Organization Agreement.

### III.

27.     Subsequent to the execution of the Information Resale Agreement, in or around February 2010, numerous individuals at FIS/Chex began expressing confusion and/or having second thoughts about the favorable pricing agreed to with MicroBilt.

28.     Evidencing how favorable that pricing is to MicroBilt, no one at either FIS or Chex has been willing to accept responsibility for the negotiation of the pricing set forth in the Information Resale Agreement.

29.     Although FIS/Chex originally honored the agreed-upon pricing, by September 2010, signals were being raised internally at FIS/Chex that FIS/Chex did not want to have any sort of relationship with MicroBilt.

30.     On or around August 31, 2010, through a series of corporate transactions, including a merger ("merger"), MicroBilt acquired the assets and liabilities of CLV. As part of the merger, CLV became a wholly owned subsidiary of MicroBilt, and MicroBilt obtained hundreds of end users from CLV.

31.     On or around September 1, 2010, CLV executed a written assignment of assets, including the Data Reseller Agreement, to MicroBilt, as specifically allowed by the provisions of that agreement.

32.     On or around September 1, 2010, CLV UK executed a written assignment of assets, including the Independent Sales Organization Agreement, to MicroBilt, as specifically allowed by the provisions of that agreement.

33.     Thus, as of September 1, 2010, the parties to the Data Reseller Agreement and Independent Sales Organization Agreement were MicroBilt, on the one hand, and Certegy UK, on the other hand.

34.     Beginning on September 1, 2010, all or substantially all of the communications to the Defendants regarding either the Data Reseller Agreement or the Independent Sales Organization Agreement came from individuals who were identified as MicroBilt employees, and who were known to the Defendants to be MicroBilt employees.

35.     On or around August 31, 2010, Philip Burgess, Grady Reynolds, William "Wink" Price (who was planning on assuming the role of MicroBilt's new Chief Executive Officer), and Kay Nichols (acting as a representative of FIS and Chex) participated in a conference call.

36.     During the call, Mr. Burgess and Mr. Reynolds advised Ms. Nichols (among many other things) that MicroBilt and CLV were merging, and that MicroBilt planned on using the more favorable pricing terms in MicroBilt's Information Resale Agreement.  The parties also discussed the United Kingdom relationship.

37.     The merger of MicroBilt and CLV caused FIS and Chex' regret about the favorable pricing agreed to in the Information Resale Agreement to escalate into full-fledged panic, at which point FIS and Chex individually and collectively entered into a course of conduct designed to harm and/or destroy MicroBilt and CLV, or at a minimum cause MicroBilt to capitulate to higher pricing.

38.     By November 2010, FIS/Chex had fabricated a laundry list of alleged MicroBilt defaults under the Information Resale Agreement.  FIS/Chex falsely and without justification alleged that MicroBilt was in default of the Information Resale Agreement because it (1) failed to properly contract with and credential certain of its end users; (2) failed to provide data as specified by Chex's "Data Contribution Policy"; (3) failed to provide full and complete credentialing files for certain end users in violation of the Information Resale Agreement; and (4) failed to satisfy retroactively adjusted invoices that reflected FIS/Chex' unilateral price increases, rather than the pricing agreed upon in the Information Resale Agreement.

39.     Based upon the fabricated defaults as described above, on February 18, 2011, counsel for FIS/Chex sent a letter to counsel for MicroBilt advising that it intended to terminate the Information Resale Agreement, as amended, in thirty days.

40.     On March 18, 2011, FIS/Chex informed MicroBilt that, if MicroBilt failed to pay Chex immediately and in full, all of the disputed amounts set forth on the retroactively adjusted invoices, it would discontinue service to MicroBilt at midnight on Sunday, March 20, 2011.

41.     On March 18, 2011, MicroBilt commenced a Chapter 11 case in an effort to reorganize, protect its end users, and preserve its business for the benefit of all creditors and other stakeholders.  On March 23, 2011, CLV commenced a Chapter 11 case as well.

42.     The Defendants were directly notified of the foregoing Chapter 11 cases.

## IV.

43.     On or around April 6, 2011, shortly after the Plaintiffs commenced their respective Chapter 11 cases, representatives of FIS/Chex directed Certegy UK to cease providing any support under the Independent Sales Organization Agreement because MicroBilt and CL Verify had filed for bankruptcy protection in the United States.

44.     Certegy UK acquiesced in this request.

45.     On information and belief, FIS/Chex gave Certegy UK this directive with ulterior motives (to maliciously cause MicroBilt and CLV financial harm), and Certegy UK accepted this directive with ulterior motives (to maliciously cause MicroBilt and CLV financial harm).  The Defendants believed that, if Certegy UK did not provide any support under the Independent Sales Organization Agreement, MicroBilt would still be required to make significant monthly minimum payments to Certegy UK under the Data Reseller Agreement (£[redacted]) without being able to generate any revenues in return, which would cause MicroBilt financial harm and cause MicroBilt to re-negotiate pricing under the Information Resale Agreement.

46.     CLV UK assigned the Independent Sales Organization Agreement to MicroBilt well prior to the bankruptcy filings, and FIS/Chex knew that this occurred.

-8-

47.    Moreover, even if FIS/Chex did not know that this occurred, FIS/Chex knew that its direction to Certegy UK to cease providing any support under the Independent Sales Organization Agreement would in effect deprive CLV, the party named on the face of the Data Reseller Agreement, of that asset of the bankruptcy estate.

48.    As such, FIS/Chex' direction to Certegy UK to cease providing any support under the Independent Sales Organization Agreement, and Certegy UK's acquiescence, violated the automatic stay provisions of the Bankruptcy Code, 11 U.S.C. § 362.

49.    To make matters worse, FIS intentionally and maliciously timed its instructions to Certegy UK so as to occur the day before a long-scheduled and highly important meeting between MicroBilt's chief United Kingdom representative and a principal of [redacted], one of the United Kingdom's largest payday lenders, which had expressed serious interest in utilizing MicroBilt's UK services on a high-volume basis after testing those services out via a pilot.

50.    Pursuant to its contractual obligations under the Independent Sales Organization Agreement, Certegy UK had previously promised to provide a data expert to attend the meeting and coordinate the pilot.  However, at the direction of FIS/Chex, Certegy UK provided no expert and suddenly dropped out of participation in the pilot program.

51.    As a direct and proximate result of FIS/Chex' conduct, MicroBilt's representative was unable to obtain the account and other large accounts, which would have provided significant revenue to MicroBilt.

52.    A key part of developing the data model MicroBilt was paying Certegy UK for was (and is) getting new clients to test the solution via a pilot, which can last several months and involves technical support and base analytics.  As a result of FIS/Chex' direction, Certegy UK walked away from providing this support.

53.     As a direct and proximate result of FIS/Chex' conduct, MicroBilt has been unable to successfully develop a revenue-producing model with Certegy UK's data, currently pays Certegy UK £[amounts redacted] in minimums from contract inception to date without the ability to generate any corresponding revenues.

54.     Further, on information and belief, FIS/Chex interfered with a November 19, 2009 contract between Certegy Check Services, Inc. ("Certegy US") and MicroBilt by directing Certegy US to refuse to abide by its prior agreements respecting marketing and pricing for new products and product development.

**COUNT ONE**
**TORTIOUS INTERFERENCE WITH EXISTING CONTRACTUAL RELATIONS**
**(PLAINTIFFS V. DEFENDANTS FIDELITY NATIONAL INFORMATION SERVICES, INC. AND CHEX SYSTEMS, INC.)**

55.     The Plaintiffs repeat each of the foregoing allegations as if set forth fully herein.

56.     The Data Reseller Agreement and Independent Sales Organization Agreement constitute valid binding contracts between MicroBilt and/or CLV, on the one hand, and Certegy UK, on the other hand.

57.     At all times, FIS/Chex were aware of the Data Reseller Agreement and Independent Sales Organization Agreement.

58.     In or around April 2011, FIS/Chex, acting through their respective owners, members, directors, executives, representatives, and/or duly authorized employees within the course and scope of their employment, undertook an intentional and unjustified course of action that was designed to cause Certegy UK to cease doing business with MicroBilt/CLV, and designed to cause prospective new end users in the United Kingdom to enter into contracts with MicroBilt's competitors instead of MicroBilt, for the purpose of harming MicroBilt and CLV.

59.    The foregoing actions were intentional, malicious, taken in bad faith, and undertaken with the intention of, among other things, causing actual and prospective United Kingdom end users (including [redacted]) to purchase information from other resellers, which would harm MicroBilt and CLV.

60.    In taking the foregoing actions, FIS/Chex employed wrongful means and acted with an improper purpose.

61.    FIS/Chex' directions and instructions to Certegy UK are not privileged, and were not justified in light of the contractual commitments and obligations of Certegy UK under the Data Reseller Agreement and Independent Sales Organization Agreement, and the profits and economic benefit which would inure to Certegy UK had it properly performed under those agreements.

62.    As a result of FIS/Chex' wrongful conduct, MicroBilt has suffered substantial money damages, including but not limited to the loss of the monthly minimums (£[amounts redacted] total to date) that have been, and are being, paid to Certegy UK on a month-by-month basis pursuant to the Data Resale Agreement, and loss of gross revenues from prospective entities in the well-established and profitable United Kingdom payday lending space, all of which has harmed MicroBilt and CL Verify and endangered and negatively impacted their market value.

**WHEREFORE**, Plaintiffs MicroBilt Corporation and CL Verify, LLC respectfully request a judgment in their favor, and against Defendants Fidelity National Information Services, Inc. and Chex Systems, Inc., jointly and severally, for compensatory damages exceeding $75,000, punitive damages, court costs, pre- and post-judgment interest, and such other relief as is necessary and appropriate in the circumstances presented.

**COUNT TWO**
**TORTIOUS INTERFERENCE WITH PROSPECTIVE CONTRACTUAL RELATIONS**
**(PLAINTIFFS V. DEFENDANTS FIDELITY NATIONAL INFORMATION SERVICES,**
**INC. AND CHEX SYSTEMS, INC.)**

63.     The Plaintiffs repeat each of the foregoing allegations as if set forth fully herein.

64.     MicroBilt's business is valued between $150,000,000 and $180,000,000, and it is regarded as the industry leader.  At all relevant times, MicroBilt and CLV had a valid expectancy that new end users would choose to do business with them in the United Kingdom, and those entities were in pursuit of additional new business.

65.     At all times, FIS/Chex were aware of MicroBilt's expectancy that new end users would choose to do business with it in the United Kingdom.

66.     In or around September 2010, and continuing thereafter, FIS/Chex, acting through their respective owners, members, directors, executives, representatives, and/or duly authorized employees acting within the course and scope of their employment, undertook an intentional and unjustified course of action that was designed to cause prospective new end users (including but not limited to [redacted], the prospective end user scheduled to meet with MicroBilt's representatives on April 6, 2011, [redacted], and [redacted] to enter into contracts with MicroBilt's competitors, all of which would result in financial harm to MicroBilt and CLV.

67.     The foregoing actions were intentional, malicious, taken in bad faith, and undertaken with the intention of, among other things, causing actual and prospective United Kingdom end users to purchase information from other resellers.

68.     In taking the foregoing actions, FIS/Chex employed wrongful means and acted with an improper purpose.

69.     As a result of the foregoing actions, a number of end users (including but not limited to [redacted], the prospective end user scheduled to meet with MicroBilt's

-12-

representatives on April 6, 2011, [redacted, and [redacted]) have chosen to do business with MicroBilt's competitors, when they otherwise would have chosen to do business with the industry leader, MicroBilt. FIS/Chex' conduct was, at a bare minimum, a significant or material factor in causing this harm to MicroBilt to occur.

70.    As a result of FIS/Chex' wrongful conduct, MicroBilt has suffered substantial money damages, including but not limited to the loss of the monthly minimums (£[amounts redacted]) that have been, and are being, paid to Certegy UK on a month-by-month basis pursuant to the Data Resale Agreement, and loss of gross revenues from prospective entities in the well-established and profitable United Kingdom payday lending space, all of which has harmed MicroBilt and CL Verify and endangered and negatively impacted their market value.

**WHEREFORE**, Plaintiffs MicroBilt Corporation and CL Verify, LLC respectfully request a judgment in their favor, and against Defendants Fidelity National Information Services, Inc. and Chex Systems, Inc., jointly and severally, for compensatory damages exceeding $75,000, punitive damages, court costs, pre- and post-judgment interest, and such other relief as is necessary and appropriate in the circumstances presented.

**COUNT THREE**
**VIOLATION OF THE AUTOMATIC STAY, 11 U.S.C. §362**
**(PLAINTIFFS V. DEFENDANTS FIDELITY NATIONAL INFORMATION SERVICES, INC., CHEX SYSTEMS, INC., AND CERTEGY LTD.)**

71.    The Plaintiffs repeat each of the foregoing allegations as if set forth fully herein.

72.    On March 18, 2011 and March 23, 2011, respectively, MicroBilt and CLV commenced Chapter 11 cases under the United States Bankruptcy Code.

73.    On those dates, pursuant to 11 U.S.C. § 362, MicroBilt and CLV automatically obtained a stay of any efforts on the part of vendors to terminate executory contracts, deprive MicroBilt and CLV of the benefit of those contracts, or take other prohibited actions.

74.     11 U.S.C. § 362(k)(1) provides that, generally, an individual "injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages."

75.     The Third Circuit has interpreted the word "individual" as it appears in 11 U.S.C. § 362(k)(1) to include corporations.    See Cuffee v. Atl. Bus. & Cmty. Dev. Corp. (*In re* Atl. Bus. & Cmty. Dev. Corp.), 901 F.2d 325, 329 (3d Cir. 1990).

76.     The Defendants' conduct, as described above, constitutes a willful, malicious, knowing, and intentional violation of the stay, designed to deprive MicroBilt and CLV of property of their bankruptcy estates and otherwise harm the Plaintiffs' bankruptcy estates in an effort to obtain an advantage in negotiations regarding the Information Resale Agreement and/or otherwise harm the Plaintiffs.

77.     As a direct and proximate result of the Defendants' conduct as aforesaid, MicroBilt has suffered substantial money damages, including but not limited to the loss of the monthly minimums ([amount redacted]) that have been, and are being, paid to Certegy UK on a month-by-month basis pursuant to the Data Resale Agreement, and loss of gross revenues from prospective entities in the well-established and profitable United Kingdom payday lending space, all of which has harmed MicroBilt and CL Verify and endangered and negatively impacted their market value.

**WHEREFORE**, Plaintiffs MicroBilt Corporation and CL Verify, LLC respectfully request a judgment in their favor, and against Defendants Fidelity National Information Services, Inc., Chex Systems, Inc., and Certegy Ltd., jointly and severally, for compensatory damages exceeding $75,000, punitive damages, court costs, pre- and post-judgment interest, attorney's fees, and such other relief as is necessary and appropriate in the circumstances presented.

-14-

## COUNT FOUR
## VIOLATION OF THE AUTOMATIC STAY, 11 U.S.C. §362
## (PLAINTIFF MICROBILT V. DEFENDANTS FIDELITY NATIONAL INFORMATION SERVICES, INC. and CHEX SYSTEMS, INC.)

78.    The Plaintiffs repeat each of the foregoing allegations as if set forth fully herein.

79.    Pursuant to the Resale Agreement described above, Chex has furnished MicroBilt Information, as described therein, in a format which has always contained, *inter alia*, full nine digit social security numbers ("SSN") and full account numbers.

### *Additional Background Relevant to the Stay Violations*

80.    MicroBilt's proprietary consumer reports and credit scores, as well as the scores of MicroBilt's vendors and the use thereof by MicroBilt's customers, all require and use the full account numbers for purposes of driving matching algorithms which attribute accounts to particular consumers by using SSNs and account numbers.  The algorithms used to match information to particular consumers are highly confidential and proprietary formulas.  In a nutshell, the algorithms assign weight to all points of identifying information associated with credit information, such as name, address, SSN, account numbers, etc.  If the total number of points or weight of such points meets a certain criteria or limit, the information is attributed, or "matched" to a particular consumer.

81.    In FACTA §§318 and 319, Congress ordered the FTC to study and report on:

> … the efficacy of increasing the number of points of identifying information that a credit reporting agency is required to match to ensure that a consumer is the correct individual to whom a consumer report relates before releasing the consumer report to a user, including (i) the extent to which [such a requirement] would (1) enhance the accuracy of credit reports; and (2) combat provision of incorrect consumer reports to users.

82.    The FTC submitted its report to Congress in December 2004 (the "FACTA Matching Report"). http://www.ftc.gov/reports/facta/041209factarpt.pdf .

-15-

83.     While the FACTA Matching Report found that consumer reporting agencies and others in the industry did not use perfect algorithms, requiring exact matching would result in good information not being accurately attributed.  The practical difficulties confronting matching procedures used by the industry, and particularly consumer reporting agencies, were described as follows:

> In designing their matching procedures, the CRAs face two challenges. First, their systems must be able to discriminate between consumers with very similar identifying information, such as a father and son with the same first and last name, living at the same address. Second, their systems must recognize an individual consumer even when his or her identifying information changes significantly, such as when a woman marries and moves to a new home, changing both her name and address.
>
> Although name, address, and SSN would appear to be sufficient to uniquely identify a consumer, inaccuracies in the data can frustrate this process. Names and addresses may change over time, and spelling errors and nicknames are common. The SSN can be a very useful for matching; however, as explained below, it is often missing, and even when present, errors are quite common. In the absence of a unique, reliable identifier for each consumer, the CRAs employ a "matching algorithm," or a set of rules that determine the likelihood that two sets of identifying information represent the same consumer. In some cases, the matching algorithm is straightforward – if an incoming record and an existing file both include the exact same name, address, and SSN, the pair clearly constitutes a correct match. Matching becomes difficult when some fields match, but other fields either do not match or are missing. *Id*. at p 37.

84.     As a result, additional studies have been conducted and the industry continues to design and implement better and fairer matching.

85.     Consumer advocates often argue that exact matching will protect against inaccurate files.  State legislators have responded with statutes which prohibit matching algorithms which rely solely upon SSN.

86.     For example, in July 2012, the State of Rhode Island recently enacted R.I. Gen

Laws § 6-13.1-29 (2012), which prohibits matching, or furnishing consumer reports solely upon

a match on SSN.  The statute provides:

> Furnishing of credit reports. -- ***No credit bureau doing business in this state shall use all or part of a consumer's social security number as the sole factor when determining whether a credit report in its files matches the identity of a person who is the subject of a credit inquiry from a user of credit reports.*** When a social security number is used as a factor, a credit bureau may disclose a credit report in its files to an inquiring user of credit reports only if the name and, at a minimum, at least one other identifier such as address, prior address, date of birth, mother's maiden name, place of employment, or prior place of employment, also match the  identity of the person who is the subject of the inquiry. (Emphasis supplied)

### Stay Violations of Chex/FIS

87.     In and around June 2012, without seeking relief from the automatic stay

provisions of the Bankruptcy Code, Chex (at the direction of FIS) engaged in brazen violations

of the automatic stay by, without limitation, (1) refusing to sign up new MicroBilt end users

unless MicroBilt provided the addresses of those end users; (2) unilaterally shutting down

MicroBilt's testing account (used by MicroBilt in the process of setting up new end users and to

test and develop products and system changes, including changes such as, incredibly, Chex

demanded new pricing codes) between June 25, 2012 and July 13, 2012; (3) representing that

they were limiting MicroBilt's access to employees of FIS/Chex to discuss routine business

needs arising under the Resale Agreement; and most significantly (4) providing new

communications specifications, to take effect in the near future, that would in effect deprive

MicroBilt of the ability to purchase Information under the Resale Agreement and terminate

MicroBilt's business.  On information and belief, Chex and FIS took the aforesaid actions in an

attempt to obtain a negotiating advantage in connection with their dispute with MicroBilt.

-17-

88.     On June 25, 2012, Chex' litigation counsel sent a letter to litigation counsel for MicroBilt, purportedly in connection with new invoices created pursuant to the Bankruptcy Court's Order in favor of MicroBilt and against Chex on pricing issues under the Resale Agreement.  In that letter, Chex' counsel included "updated … Communications Specifications to establish Use Fee Codes" which he explained "tracks the uses and prices noted in the Order."

89.     However, the new Communications Specifications did far more than add codes for the new and favorable pricing.  The new Communications Specifications both altered the parties' long standing reporting practices and made a change to future Information to be furnished by Chex, by providing MicroBilt with only truncated SSN and account numbers, shortened from nine (9) digits to four (4).

90.     Further, the new Use Fee Codes cannot be implemented by MicroBilt unless and until is starts to use the new Communications Specifications.  That is, Chex has attempted to force MicroBilt to agree to receive truncated information before Chex would implement the Court-ordered pricing.

91.     The dramatic sea-change in the Information which Chex intends to furnish MicroBilt will effectively render useless all existing matching algorithms and scores.

92.     Because algorithms and scores take months or even years to develop, changes in the Information to which the formulas are applied also take months and thousands of man-hours and untold dollars to modify, if possible.  For example, as found in the FTC Study, the absence of full SSN information may never be effectively replaced by mere use of addresses and names, especially when addresses change and names are often partial (or nicknames) or change with marriage and divorce.  Removing such a significant element of matching algorithms may render all such algorithms useless beyond repair.

-18-

93.     Further, because MicroBilt relies on proprietary and trade-secret vendor scores and algorithms, MicroBilt has no way to determine the extent of the damage to the reliability of an outside score or algorithm by taking away elements such as full SSN or account information or whether changes can be made to remedy the harm.

94.     The very same June 25, 2012 letter also purported to unilaterally change the manner in which Chex sets up new "end-users", the entities to which MicroBilt resells Chex consumer Information.  The change involved the new requirement that MicroBilt provide Chex with full address information for MicroBilt's new end user customers.

95.     In connection with that demand, Chex refused to sign up new end users.  Unless and until Chex signs up a new end user, that entity cannot access MicroBilt's products which use, in part, the Chex Information.

96.     Chex' refusal interfered with MicroBilt's ability to provide services to various end user customers and caused MicroBilt to terminate marketing to new end-users because its efforts would be frustrated by Chex refusal to sign up new end users.

97.     The demand for such information is inconsistent with the parties' long standing practices for signing up new end users which were specifically designed to protect MicroBilt's customer list from misuse by Chex and unfair competition by MicroBilt's competitor resellers of Chex Information.

98.     In fact, the parties expressly negotiated an amendment to the Resale Agreement in January of 2010, which intentionally limited the information to which Chex was entitled with regard to new end users (i.e., customer name only).

99.     MicroBilt challenged Chex' demand for the additional end user information and counsel for Chex stated, both in emails to counsel and in court, that the Rhode Island statute

described above was a statutory change which required Chex to obtain the additional information sought.

100.    Chex' counsel's assertion of the statute to justify the change in sign up procedures was not in good faith because it is clear from the face of the statute that the Rhode Island legislature had no intention of applying the SSN matching rules to corporations in the credit industry.

101.    Further, Chex' counsel attempted to justify the changes to the Communication Specifications and truncation of the SSN by asserting the new rules and requirements of the Rhode Island statute, and other un-named but allegedly similar statutes.

102.    Likewise, there is no basis to contend the Rhode Island statute has anything to do with the transactions between Chex and MicroBilt, or MicroBilt and its end-users.

103.    Chex' unsupported and unreasonable restrictions will effectively terminate MicroBilt's business, particularly once it enforces the truncation rules.

104.    On March 18, 2011 and March 23, 2011, respectively, MicroBilt and CLV commenced Chapter 11 cases under the United States Bankruptcy Code.

105.    On those dates, pursuant to 11 U.S.C. § 362, MicroBilt and CLV automatically obtained a stay of any efforts on the part of vendors to terminate executory contracts, deprive MicroBilt and CLV of the benefit of those contracts, or take other prohibited actions.

106.    11 U.S.C. § 362(k)(1) provides that, generally, an individual "injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages."

107.    The Third Circuit has interpreted the word "individual" as it appears in 11 U.S.C. § 362(k)(1) to include corporations.   See Cuffee v. Atl. Bus. & Cmty. Dev. Corp. (*In re* Atl. Bus. & Cmty. Dev. Corp.), 901 F.2d 325, 329 (3d Cir. 1990).

-20-

108.    The conduct of Chex and FIS, as described above, constitutes a willful, malicious, knowing, and intentional violation of the stay, designed to deprive MicroBilt of property of its bankruptcy estate and otherwise harm the Plaintiff's bankruptcy estate in an effort to obtain an advantage in negotiations regarding the Information Resale Agreement and/or otherwise harm Plaintiff.

109.    As a direct and proximate result of the Defendants' conduct as aforesaid, MicroBilt has suffered substantial money damages, including but not limited to the loss of business in the form of new and prospective end users and the prospect of a termination of its business due to the termination of Chex' furnishing of usable Information as required under the Resale Agreement, all of which has harmed MicroBilt and endangered and negatively impacted its market value.

**WHEREFORE**, Plaintiff MicroBilt Corporation, respectfully requests a judgment in their favor, and against Defendants Fidelity National Information Services, Inc. and Chex Systems, Inc., jointly and severally, for compensatory damages exceeding $75,000, punitive damages, court costs, pre- and post-judgment interest, attorney's fees, and such other relief as is necessary and appropriate in the circumstances presented, including injunctive relief to prevent any change to the Communication Specifications, the furnishing of Information or the signing up of end users.

Dated: <u>August 1, 2012</u>            Respectfully submitted,

SHERMAN, SILVERSTEIN, KOHL,
ROSE & PODOLSKY, P.A.

By:    <u>/s/ Bruce S. Luckman</u>
Bruce S. Luckman
Michael Dube
308 Harper Drive, Suite 200
Moorestown, NJ 08057
Telephone: 856-662-0700

-21-

Facsimile: 856-488-4744

*Attorneys for Plaintiffs MicroBilt Corporation and
CL Verify, LLC*